UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00466-MOC

| | | |
|---|---|---|
| **ROBIN M. SCRUGGS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#11),

the Commissioner's Motion for Summary Judgment (#13), and the supplemental briefs of the

parties relating to the impact of the Fourth Circuit's recent decision in in <u>Mascio v. Colvin</u>, 780

F.3d 632 (4th Cir. 2015), on Plaintiff's claims. (## 17, 18). Having carefully considered such

motions and reviewed the pleadings, the court enters the following findings, conclusions, and

Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for Title II benefits on April 9, 2011, alleging disability with

an onset date of October 26, 2009. (Tr. 175). Plaintiff's application was denied initially, (Tr. 95-

98), and again upon reconsideration. (Tr. 99-106). Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), (Tr. 107-114), which was held in Charlotte, North Carolina

on February 28, 2013, before ALJ Clinton C. Hicks. (Tr. 41). At that hearing, Plaintiff was

1

represented by counsel. (Tr. 41). The ALJ denied Plaintiff's claim in a written decision dated April 1, 2013. (Tr. 15). Plaintiff requested review of the ALJ's decision with the Appeals Council, (Tr. 14), but such request was denied on June 26, 2014, (Tr. 1-6), making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Thereafter, Plaintiff timely filed this action.

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

The Fourth Circuit has explained substantial evidence review as follows:

the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If

the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV.     Substantial Evidence

### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence.  For the reasons explained herein, the court finds that it is not.

### B.     Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.     An individual who does not have a "severe impairment" will not be found to be disabled;

c.     If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in

Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C.      The Administrative Decision**

With an alleged onset date of October 26, 2009, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 20). At step two, the ALJ found that Plaintiff had the following severe impairments: plantar fasciitis; status post left navicular fracture; bilateral shoulder bursitis; mild degenerative joint disease of the right knee; morbid obesity; and depression with anxiety. (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). The ALJ then found that Plaintiff had the residual functioning capacity ("RFC") to

perform sedentary work as defined in 20 C.F.R. § 404.1567(a).[1] (Tr. 22). The ALJ further found

that Plaintiff required a cane to ambulate, but not to perform job duties, and that Plaintiff could

perform simple, routine, repetitive tasks and meet the demands of unskilled work in a

nonproduction environment. (Tr. 22). At step four, the ALJ found that Plaintiff had no past

relevant work. (Tr. 27). At step five, the ALJ found that Plaintiff could perform jobs existing in

significant numbers in the national economy, specifically: (1) food and beverage order clerk; (2)

dowel inspector; and (3) packing and filling machine tender. (Tr. 28). Accordingly, the ALJ

found that Plaintiff was not disabled.

### D. Discussion

#### 1. *Plaintiff's Assignments of Error*

Plaintiff seeks review of the Commissioner's final administrative decision, alleging: 1) the

ALJ's mental RFC finding was insufficiently specific and unsupported by substantial evidence;

2) the Vocational Expert's ("VE") testimony concerning the type of jobs Plaintiff could perform

conflicted with the Dictionary of Occupational Titles ("DOT") and that the ALJ failed to resolve

this purported conflict; and 3) the ALJ did not properly consider a third-party function report

from Plaintiff's daughter. The court has carefully considered Plaintiff's assignments of error,

particularly in light of the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632

(4th Cir. 2015), and finds that remand is appropriate, as explained below.

---

[1] 20 C.F.R. § 404.1567 states that sedentary work involves "lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is
defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out
job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

### *2. Plaintiff's First Assignment of Error: Mental Residual Functioning Capacity*

Plaintiff argues that the ALJ erred in assessing her mental RFC. Specifically, she argues that the ALJ failed to make a function-by-function analysis of any non-exertional mental functions associated with her severe bipolar disorder mixed, severe psychotic behavior, major depressive order, and generalized anxiety. She argues that the ALJ's "generic" finding that she was limited to simple, routine, repetitive tasks failed to follow the directives of Social Security Ruling ("SSR") 96-8p and that this error merits remand.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). RFC is a statement of the most a person can do in a work setting in light if his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996

WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. SSR 96-8P, 1996 WL 374184, at *5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)….it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Relevant to the ALJ's finding here that Plaintiff was able to "perform simple, routine, repetitive tasks and meet the demands of 'unskilled' work in a nonproduction environment," (Tr. 22), the "basic mental demands of … unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.

Only after that function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed.Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and

citations omitted). The Fourth Circuit in <u>Mascio</u> declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" <u>Id.</u> (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*)). Instead, the court found that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" <u>Id.</u> (quoting <u>Cichocki</u>, 729 F.3d at 177).

Applying that standard, the Fourth Circuit in <u>Mascio</u> concluded that remand was appropriate in that case because the ALJ had determined that the claimant could perform certain functions, but "said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point. <u>Id.</u> Because the court was "left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions," remand was appropriate. <u>Id.</u> at 637.

Here, the ALJ did not perform an explicit function-by-function analysis. But that failure alone, as the Fourth Circuit explained in <u>Mascio</u>, is not enough to require remand. Instead, the court must determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record. Here, the ALJ discussed much medical evidence of record relevant to Plaintiff's mental impairments. The ALJ noted that Plaintiff alleged problems with maintaining attention and focus due to depression and pain, (Tr.

22), and that she reported no problems following spoken instructions, but some difficulty with written instructions. (Tr. 22, 199, 207). The ALJ additionally noted that Plaintiff alleged being forgetful. (Tr. 23, 54). The ALJ discussed records from Plaintiff's treating psychiatrist indicating that Plaintiff showed improved concentration, attention, and focus when she was compliant with medications, <u>see</u> (Tr. 22, 25, 293, 295, 386), as well as the Global Assessment Functioning scores that he assigned Plaintiff. (Tr. 25, 303, 476).[2] The ALJ noted that Plaintiff reported a poor tolerance to changes in routine but denied any problems in getting along with authority figures. (Tr. 22, 208). Additionally, the ALJ found that the record showed only mild difficulties in social functioning; Plaintiff reported some difficulty in crowds, (Tr. 199), but also reported that she regularly goes to stores, out to dinner, and to church, and that she spends time with family and friends in person or communicates with them by computer or telephone every day. (Tr. 22, 205-06). Plaintiff's reports of daily activities include running errands, preparing meals, caring for a pet dog, spending time with her daughter and grandchild, doing puzzles, playing games on the computer, and going to restaurants, stores, and church. (Tr. 25-26).

The ALJ also considered findings from state agency psychological consultants, and noted that his mental RFC finding was consistent with their opinions, with the additional limitation that

---

[2] As for Plaintiff's argument that the ALJ improperly relied upon Dr. Patel's reports of her GAF scores, (Pl. Mem. (#12) at 8-9), the court finds such argument unavailing. As Plaintiff acknowledges in her brief, while GAF scores are not dispositive of impairment severity, they are an appropriate source of opinion evidence for consideration of a claimant's disability. The court finds no error in the ALJ discussing, along with the other of record, the fact that Dr. Patel assigned Plaintiff a GAF score. <u>See</u> <u>Phan v. Colvin</u>, No. CA 13-650L, 2014 WL 5847557, at *2, n. 3 (D.R.I. Nov. 12, 2014) ("To clarify the use of GAF scores, the [SSA] recently released an Administrative Message (identification number AM–13066, effective date July 22, 2013)…that provides guidance to all State and Federal adjudicators (including administrative law judges) on how to consider ... GAF ratings when assessing disability claims involving mental disorders...the SSA Admin Message makes clear that SSA will continue to receive and consider GAF in medical evidence.") (quotations omitted).

Plaintiff was limited to a nonproduction environment. (Tr. 27, 87). <u>See</u> <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235 (4th Cir. 1984) ("the testimony of a nonexamining physician can be relied upon when it is consistent with the record"); SSR 96-6p, 1996 WL 374180, at *2 (stating that the opinions of state agency consultants can be given weight insofar as they are supported by evidence in the record). Though the ALJ did not specifically note the findings of Dr. Nancy Herrera, a nonexamining state agency medical consultant who reviewed the record on August 22, 2011, she opined that Plaintiff was not significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. (Tr. 87). Dr. Herrera also opined that Plaintiff could sustain attention for simple 2-3 step instructions for two-hour periods within an 8-hour work day. (<u>Id.</u>)

Here, the ALJ stated after summarizing the evidence of Plaintiff's mental impairments, "[b]ased on the evidence as a whole, the undersigned is convinced that the claimant is able to perform simple, routine, repetitive tasks in a nonproduction environment." (Tr. 25). Without more, however, the court believes that the Fourth Circuit's reasoning regarding remand in <u>Mascio</u> is directly applicable here: "although the ALJ concluded that [Plaintiff] can perform certain functions, he said nothing about [Plaintiff's] ability to perform them for a full workday." <u>Mascio v. Colvin</u>, 780 F.3d 632, 637 (4th Cir. 2015). The court finds that an explanation of how Plaintiff's mental limitations affect her ability to perform work-related functions, as well as her ability to perform them for a full workday, to be necessary here. Because the court is left to guess as to how the ALJ concluded that Plaintiff could perform the relevant functions in light of her

mental limitations, the court finds that substantial evidence does not support his decision and that remand is therefore appropriate.

### 3. *Plaintiff's Second Assignment of Error: Vocational Expert Testimony and DOT*

Plaintiff also argues that the ALJ erred by accepting testimony from a vocational expert that directly conflicts with the DOT. She argues that this alleged failure to obtain an explanation for these conflicts or to resolve them in his written decision merits remand. Before reaching the merits of Plaintiff's argument about conflicting testimony, the court notes that it again finds Mascio instructive. The Fourth Circuit clearly held in Mascio that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. at 638. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). In Mascio, the ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, but his RFC finding limited the claimant to merely "unskilled work." Id. at 635. When questioning the VE, "the hypothetical said nothing about [claimant's] mental limitations," but the VE's responses were all based on "unskilled work," and thus, the hypothetical and VE testimony lined up with the RFC. Id. at 637. In remanding the case, the Fourth Circuit in Mascio found that a claimant's ability to perform simple tasks differs from the ability to stay on task, and thus a limitation to simple, routine tasks, or unskilled work does not account for a claimant's limitations in concentration, persistence, or pace. Id. at 638.

Plaintiff argues that the holding in Mascio is directly applicable to the facts of this case. The court agrees. Here, the ALJ found that Plaintiff had moderate difficulties in concentration,

persistence, or pace. See (Tr. 22). The ALJ's RFC allowed Plaintiff "to perform simple, routine, repetitive tasks and meet the demands of 'unskilled' work in a nonproduction environment." Id. Relying on this RFC at the hearing, the ALJ posed a hypothetical to the VE, asking whether work would be available to Plaintiff under the following conditions: "she can do the full range of sedentary work. She needs a cane to ambulate, but not in the performance of her duties; simple, routine, repetitive tasks in a non-production setting." (Tr. 58). Here, as in Mascio, although the ALJ's hypothetical said nothing about "unskilled work," the expert added that limitation to her response. See Mascio, 780 F.3d at 638, n.7; Tr. 58-59. The court finds that the facts here squarely align with Mascio, and as such, believes that remand is appropriate so that the ALJ may properly account for plaintiff's limitations in concentration, persistence, or pace. See Raynor v. Colvin, No. 5:14-CV-271-BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production).

The Commissioner attempts to distinguish Mascio by arguing that here, the ALJ's RFC finding and questioning to the VE did not merely limit Plaintiff to unskilled work or simple, routine tasks, but also restricted Plaintiff to repetitive tasks in a nonproduction environment. (Tr. 22). The Commissioner correctly notes that the Fourth Circuit did not explicitly address whether a limitation to repetitive tasks or a nonproduction environment could account for a claimant's moderate difficulties in concentration, persistence, or pace, and urges the court to find Mascio

inapplicable here. However, as concisely stated by another court in this Circuit in light of Mascio, "common sense and context dictate that a limitation to repetitive tasks relates more to a claimant's ability to perform simple tasks, than to his ability to stay on task. Accordingly, like the limitations to routine tasks and unskilled work, a limitation to repetitive tasks does not account for a claimant's difficulties in concentration, persistence, and pace."). Hill v. Comm'r, Soc. Sec., No. CIV. GLR-14-2872, 2015 WL 1893308, at *4, n. 4 (D. Md. Apr. 24, 2015). See also Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *2 (M.D.N.C. Apr. 2, 2015) (remanding where ALJ failed to account for claimant's moderate difficulties in concentration, persistence or pace in his RFC and hypothetical to the vocational expert, which limited claimant to "simple, routine, repetitive tasks."). The court finds that the same logic applies to a limitation of a "nonproduction" environment, which as Plaintiff correctly notes, the ALJ does not clearly define. Accordingly, the court finds that remand is appropriate because neither the ALJ's RFC nor his hypothetical to the VE addresses Plaintiff's ability to stay on task. Mascio, 780 F.3d at 638; Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (remanding because the ALJ failed to address claimant's ability to stay on task as required by Mascio).

Finding that remand is appropriate partially based on the colloquy between the ALJ and VE at the hearing, the court will not address Plaintiff's additional assignment of error regarding the alleged conflict between the DOT and the VE testimony. Similarly, given that remand is appropriate, the court will not address Plaintiff's assignment of error as to the ALJ's consideration of third party statements.

### E.      Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be reversed and remanded for further proceedings consistent with this order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)      the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED**;

(2)      Plaintiff's Motion for Summary Judgment (#11) is **GRANTED**;

(3)      the Commissioner's Motion for Summary Judgment (#13) is **DENIED**; and

(4)      this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: May 12, 2015



Max O. Cogburn Jr.
United States District Judge